UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 25-cr-81-3 (TJK) |
| : | |
| NASEER GREEN, : | |
| : | |
| Defendant. : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

Defendant Naseer Green pled guilty to a two-count information, charging him with Possession with Intent to Distribute a Mixture or Substance Containing a Detectable Amount of Fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(c) (Count One); and Possession of a Firearm in Furtherance of a Drug Trafficking Offense, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count Two). For the reasons herein, the Government respectfully requests that the Court sentence the Defendant to 78 months imprisonment, in aggregate across the Defendant's two counts of conviction, followed by three years of supervised release.

## FACTUAL AND PROCEDURAL BACKGROUND

On March 16, 2025, at approximately 2:00 AM, officers with the Metropolitan Police Department ("MPD") conducted a traffic stop on a sedan parked in a no-parking zone with four men inside. Very shortly after initiating the stop, the officers saw a handgun between the legs of one of the rear passengers of the vehicle. After additional units responded to the scene, MPD searched the vehicle's occupants incident to arrest, and three of the four occupants had a firearm, including Defendant Green. Defendant Green and Sequan Collier had firearms tucked in their waistbands, and Wesley Hilliard was the rear passenger who had a firearm between his legs on the seat of the car. Defendant Green's Glock handgun had an extended magazine with a 24-round capacity and was fully loaded, with one round already in the chamber, ready to be fired.

Additionally, Defendant Green's gun had a machinegun conversion device, known as a "switch," which allowed the gun to operate as a fully automatic firearm.

Officers also found 24 white pills within an orange pill bottle missing a label; 134 blue pills within a clear bag; 4.0 grams of a white powdery substance within a clear bag; and $357 on Defendant Green. The white powdery substance and blue pills were tested by the DEA Mid-Atlantic Laboratory and tested positive for fentanyl, totaling 13.4 grams; the white pills in the pill bottle tested positive for Oxycodone, totaling 2.4 grams.

## STATUTORY PENALTIES

Pursuant to Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(c), Count One of the Information carries a maximum term of 20 years imprisonment, a fine not to exceed $1,000,000, and a term of supervised release of at least three years.

Pursuant to Title 18, United States Code, Section 924(c)(1)(A)(i), Count Two of the Information carries a mandatory minimum term of five years of imprisonment, to be imposed consecutively to any other count of conviction, a maximum term of life imprisonment, a fine not to exceed $250,000, and a term of supervised release of no greater than five years.

## SENTENCING GUIDELINES

The Government concurs with the Pre-Sentence Report's[1] (the "PSR") calculation that the Defendant has one criminal history point, resulting in a Criminal History Category of I under the United States Sentencing Guidelines (the "Guidelines"). PSR at ¶ 50.

The Government also concurs with the PSR that the Defendant's base offense level for Count One is 18, before any downward adjustments, and that the Defendant accepted responsibility

---

[1] All paragraph references are to the draft pre-sentence report. ECF No. 79. The Government submitted no objections to the draft PSR. ECF No. 83.

early enough in the case so as to qualify for a three-point reduction to his offense level. PSR at ¶¶ 36-46. Thus, the resultant total offense level of 15, along with a Criminal History Category of I, results in a corresponding range of imprisonment for Count One under the Guidelines of 18 to 24 months.

With respect to Count Two, the applicable guidelines are set forth in U.S.S.G. § 2K2.4(b), which requires that the minimum term of imprisonment, 60 months, be imposed consecutively to any other sentence, pursuant to 18 U.S.C. § 924(c)(1)(A)(i). Thus, in aggregate, the Defendant's recommended Guidelines range is 78 to 84 months imprisonment, with a mandatory minimum term of imprisonment of 60 months, required by statute.

## LEGAL PRINCIPLES

When determining the appropriate sentence, the district court should consider all of the applicable factors set forth in Title 18, United States Code, Section 3553(a). *See United States v. Gall*, 552 U.S. 38, 49-50 (2007). Indeed, the Guidelines themselves are designed to calculate sentences in a way that implements the considerations relevant to sentencing as articulated in Section 3553(a). *United States v. Rita*, 551 U.S. 338, 348-50 (2007). The Section 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment; (3) the kinds of sentences available; (4) the sentencing range established by the Sentencing Guidelines; (5) any related Sentencing Commission policy statements; (6) the need to avoid unwarranted sentence disparities; and (7) the need for restitution to any victims.

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in *Blakely v. Washington*, 542 U.S. 296 (2004). As a consequence, the Court invalidated the statutory provision that made the Guidelines mandatory. *Booker*, 543 U.S. at 245. Nonetheless, a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. *See Gall*, 128 S. Ct. at 598 ("As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark"). The Guidelines are the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions. *See Rita*, 551 U.S. at 338; *see also* United States Sentencing Comm'n, Supplementary Report on the Initial Guidelines and Policy Statements 16-17 (1987); 28 U.S.C. § 994(m) (requiring Commission to "ascertain the average sentences imposed . . . prior to the creation of the Commission"); Comprehensive Crime Control Act of 1984, S. Rep. No. 98-225, at 438 (Commission should produce a "complete set of guidelines that covers in one manner or another all important variations that commonly may be expected in criminal cases"). In addition, the Sentencing Commission has continued to study district court and appellate sentencing decisions and to "modify its Guidelines in light of what it learns." *Booker*, 543 U.S. at 264 (the Sentencing Commission will continue "collecting information about actual district court sentencing decisions . . . and revising the Guidelines accordingly").

The Guidelines themselves are designed to calculate sentences in a way that implements the considerations relevant to sentencing as articulated in Section 3553(a). Any Guidelines calculation is based on the individual characteristics of the offense and the offender, as required by Section 3553(a)(1). The Guidelines themselves thus seek to implement—in a fair and uniform

way—the offense specific characteristics that, themselves, comprise the "individualized assessment" the Supreme Court commends in *Gall*. *See Gall*, 552 U.S. at 50.

## ARGUMENT

A sentence of 78 months of imprisonment is appropriate in light of the seriousness of the offense. The Government's recommended sentence is also designed to deter others, promote respect for the law, and offer rehabilitation to the Defendant.

### 1. The Nature, Circumstances, and Seriousness of the Offense

The offense to which the Defendant pleaded guilty is serious. Not only did the Defendant possess a handgun illegally, but his gun had an extended magazine, it was fully loaded with 24 rounds of ammunition, there was a bullet in the chamber, and the gun had been modified to be fully automatic. And the handgun was not in a house, it was in the Defendant's waistband, readily accessible as he sat in a car with two other armed individuals. Additionally, the Defendant possessed fentanyl and oxycodone for distribution, and both the Defendant and his co-defendant, Collier, possessed large amounts of cash, additional indicia that the Defendant was involved in selling drugs.

As the Court is well aware, our community continues to face too much gun violence. There were 187 homicides in 2024, and while that number is down from a historic high in 2023, it is still more than double what it was in 2012. *See* MPD, *District Crime Data at a Glance*.[2] In 2023, the last year with data available, 90 percent of the homicides in D.C. involved a handgun. *See* MPD, *Annual Report 2023*, 19.[3] And while the number of non-fatal shootings is not part of the city's annual crime report, in 2022 the National Institute for Criminal Justice Reform reported that there

---

[2] https://mpdc.dc.gov/node/197622
[3] https://mpdc.dc.gov/sites/default/files/dc/sites/mpdc/publication/attachments/Annual%20Report%202023_READER_lowres.pdf

were 587 nonfatal shootings in D.C. *See* NICJR, *Gun Violence Problem Analysis, Summary Report*, 1.[4] Thus, merely possessing a firearm—especially in relation to a drug trafficking crime—is serious. After all, all instances of gun violence are also instances of gun possession.

### 2. The Defendant's History and Characteristics

The parties agree that the PSR accurately computes the Defendant's criminal history score. However, while the Defendant has no adult criminal history, he is 19 years old. The Defendant's juvenile criminal history suggests that his instant conviction does not reflect aberrant conduct. The Defendant has two prior firearms convictions, at ages 16 and 17. PSR at ¶¶ 47-48. On both occasions, the Defendant was found to be in possession of a firearm in public, and for his age 17 conviction, he was sentenced to a year of probation for Possession with Intent to Distribute a Controlled Substance While Armed, essentially the same offense he pled guilty to in this case. Clearly his previous interaction with the criminal justice system did not deter him from continuing to engage in this conduct.

### 3. The Need to Promote Respect for the Law and Deterrence

The Defendant's sentence should reflect the seriousness of the offense, promote respect for the law, afford adequate deterrence, and provide just punishment for the offense. *See* 18 U.S.C. § 3553(a)(2). Perhaps more than any other factor, the need to deter narcotics trafficking of dangerous drugs and the use of firearms in furtherance thereof weighs most heavily in favor of a sentence within the applicable guidelines range. As the Court is well aware, drug trafficking is an inherently dangerous business, and this danger is only amplified by the introduction of firepower, as the Defendant possessed here. Given the attendant harms to the community, the Defendant's sentence should disincentivize others from engaging in similar criminal conduct.

---

[4] https://cjcc.dc.gov/sites/default/files/dc/sites/cjcc/NICJR%20GVPA%20Summary%20Report%20%28January%202024%29.pdf

4.  **Other factors**

Given the catastrophic impact of drugs and guns on our community, a sentence of 78 months imprisonment is warranted. Too many people do not understand or fear the consequences to themselves or their community that flow from this behavior.

Further, the Government's requested sentence will hopefully provide the Defendant the skills and incentives he needs to make better choices and avoid criminal behavior in the future. Specifically, it will provide the Defendant with an adequate amount of time to take advantage of many of the programs offered by the Bureau of Prisons (BOP). These programs are designed to provide the Defendant with these aforementioned skills to hopefully discourage recidivism and re-enter society as a contributing member. The Probation Office has researched and identified available programs within the BOP, and the Government hopes that the Defendant will take full advantage of those programs during his incarceration. PSR at ¶ 116.

## CONCLUSION

The Defendant possessed a dangerous firearm and dangerous drugs. The Defendant accepted responsibility for his conduct, but the Defendant's conduct is serious and merits a commensurate sentence. The Government respectfully recommends that the Court sentence the Defendant to 78 months of imprisonment, followed by three years of supervised release.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

By: _/s/ Kate M. Naseef_
KATE M. NASEEF
MATTHEW W. KINSKEY
Assistant United States Attorneys
VA Bar No. 87850 (Naseef)
D.C. Bar No. 1031975 (Kinskey)
United States Attorney's Office

Violent Crime & Narcotics Trafficking Section
601 D Street, NW
Washington, D.C. 20530